## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DAVID FRANKFURTER, individually and on behalf
of all others similarly situated,

     *Plaintiff*,

     v.

COMMUNITY HEALTH CENTER, INC.,

     *Defendant*.

Case No. 3:25cv344(MPS)

## RULING ON PLAINTIFF'S MOTION TO REMAND

This case arises from a data breach. The Plaintiff, David Frankfurter, on behalf of himself

and a putative class, sued the defendant, Community Health Center, Inc. ("CHC"), a healthcare

provider, in state court. Frankfurter alleges that CHC failed to safeguard its patient information

and that as a result, his and others' information was disclosed in an October 14, 2024 data breach.

ECF No. 1-1. The complaint asserts state law claims of negligence, breach of implied contract,

unjust enrichment, and invasion of privacy. CHC removed this action to federal court, asserting

jurisdiction under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C.

§ 233, the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and the Class Action Fairness

Act ("CAFA"), 28 U.S.C. § 1332(d). Frankfurter has moved to remand the case to state court.

ECF No. 14. For the reasons set forth below, I grant the motion to remand.

## I.    Factual and Procedural Background

The following facts are drawn from the complaint, ECF No. 1-1, and CHC's notice of

removal. ECF No. 1.

Frankfurter is a "citizen and resident of Connecticut." ECF No. 1-1 ¶ 24. CHC is a

nonprofit, federally-supported community health center that serves patients at more than 200

locations in Connecticut. ECF No. 1 ¶ 1; ECF No. 1-1 ¶ 26. It is a corporation organized under the laws of Connecticut with its principal place of business in Middletown, Connecticut. ECF No. 1-1 ¶ 25.

CHC is a "deemed" community health center under the Federally Supported Health Centers Assistance Act ("FSHCAA"). ECF No. 1 ¶¶ 1, 11; ECF No. 1-3. "The FSHCAA authorizes the Secretary of the Department of Health and Human Services to deem certain health centers that receive federal funds, and their employees, to be employees of the Public Health Service ('PHS') for the purposes of 42 U.S.C. § 233." *Agyin v. Razmzan*, 986 F.3d 168, 172 (2d Cir. 2021). Under § 233(a), PHS employees are entitled to the protections of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), including immunity "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions."[1] *See also Hui v. Castaneda*, 559 U.S. 799, 806 (2010) ("Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct. By its terms, § 233(a) limits recovery for such conduct to suits against the United States.").

Frankfurter, a former patient of CHC, provided his private information to CHC as a condition of receiving medical services. ECF No. 1-1 ¶ 140. CHC "promised to provide

---

[1] Section 233(a) states:

(a) Exclusiveness of remedy
The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

confidentiality and adequate security [for] the data it collected from its patients, including through disclosures in compliance with statutory privacy requirements." *Id.* ¶ 29. CHC "is required to keep patients' Private Information private; comply with industry standards related to data security and the maintenance of their patients' Private Information; inform their patients of its legal duties relating to data security; comply with all federal and state laws protecting patients' Private Information; only use and release patients' Private Information for reasons that relate to the services they provide; and provide adequate notice to patients if their Private Information is disclosed without authorization." *Id.* ¶ 30.

On January 2, 2025, CHC became aware of a data security incident that occurred on October 14, 2024, and resulted in "unauthorized access to certain personal and/or protected health information maintained by CHC." *Id.* ¶ 1. The data breach "occurred as a direct result of [CHC's] failure to implement and follow basic security procedures, and its failure to follow its own policies, in order to protect its patients' personal information." *Id.* ¶ 43. CHC "has confirmed that the following information may have been exfiltrated: names, addresses, phone numbers, email addresses, dates of birth, diagnoses, test results, treatment information, health insurance information, and Social Security numbers. Up to 1,060,936 individuals have been affected[.]" *Id.* ¶ 143. Frankfurter's personal information was "compromised and unlawfully accessed due to the Data Breach." *Id.* ¶ 3. Frankfurter alleges that he has suffered emotional distress and out-of-pocket costs incurred to remedy or mitigate the effects of the breach. *Id.* ¶ 136.

Frankfurter brings this action on his own behalf and on behalf of a putative class of current and former patients defined as "[a]ll individuals [whose] Private Information was compromised in the Data Breach with Community Health Center, Inc. on or before October 14, 2024." *Id.* ¶¶ 27, 151. The action was filed in state court and alleges only state law claims.

3

**Removal**

On February 10, 2025, CHC reported to the HHS Secretary that CHC had been served with a complaint.  ECF No. 1 ¶ 37.  Thereafter, on February 25, 2025, the Attorney General appeared in state court and filed a notice stating that "[p]ursuant to 42 U.S.C. § 233(l)(1), the United States is appearing for the limited purpose of notifying the Court that HHS had 'deemed' Community Health Center, Inc. to be an 'employee of the Public Health Service' for the relevant time period. However, Plaintiffs' Complaint does not arise out of any conduct by Community Health Center Inc., for which § 233(a) makes the remedy against the United States exclusive."  ECF No. 1-2 at 10, Notice of the United States under 42 U.S.C. § 233(l)(1).  The Attorney General advised that "[a]ccordingly, the United States will not intervene in this case or remove it to federal court."  *Id.*

On March 10, 2025, CHC removed the case to federal court, alleging that the Court has jurisdiction on three separate and independent grounds: (1) FSHCAA, 42 U.S.C. § 233(l)(2), (2) the federal officer statute, 28 U.S.C. § 1442(a)(1), and (3) CAFA, 28 U.S.C. § 1332(d).  ECF No. 1.

## II.    Legal Standard

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A civil action brought in state court can be removed to federal court only if the action is one over which the federal court has original jurisdiction.  28 U.S.C. § 1441(a).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  The removing party "has the burden of establishing that removal is proper."  *State ex rel. Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023) (quotation marks omitted).

## III.    Discussion

### A.    42 U.S.C. § 233(l)(2)[2]

Frankfurter argues that removal under 42 U.S.C. § 233(l)(2) is improper.  ECF No. 14-1 at 12.  I agree.

Removal under the FSHCAA is authorized "in only two circumstances."  *Allen v. Christenberry,* 327 F.3d 1290, 1295 (11th Cir. 2003).  First, the Attorney General may remove a case to federal court.  *See* 42 U.S.C. §§ 233(c) and (l)(1).  Section 233(c) provides: "Upon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General . . . ."  Section 233(l)(1) provides:

> If a civil action or proceeding is filed in a State court against any entity described in subsection (g)(4) or any officer, governing board member, employee, or any contractor of such an entity for damages described in subsection (a), the Attorney General, within 15 days after being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h), that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding. Such advice shall be deemed to satisfy the provisions of subsection (c) that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility.

Second, the defendant may remove the case if the Attorney General fails to appear in the state court proceeding within fifteen days of being notified of the filing of the case as set forth in § 233(l)(1).  *See* § 233(l)(2).  Section 233(l)(2) provides:

> If the Attorney General fails to appear in State court within the time period prescribed under paragraph (1), upon petition of any entity or officer, governing board member, employee, or contractor of the entity named, the civil action or

---

[2] The United States has filed a "Notice of the United States Regarding Federal Subject Matter Jurisdiction" in which it argues that removal under 42 U.S.C. § 233(l)(2) and 28 U.S.C. § 1442(a)(1) was improper.  ECF No. 31.

proceeding shall be removed to the appropriate United States district court. The civil action or proceeding shall be stayed in such court until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) and issues an order consistent with such determination.

CHC's argument is premised on both provisions of § 233(l). Specifically, it argues that because the Secretary of HHS had "deemed" CHC to be an employee of the Public Health Service, the Attorney General was required to remove the case under § 233(l)(1). ECF No. 24 at 18, 21 ("Under § 233(l)(1), the Attorney General was obligated to advise the state court of CHCI's *positive* deemed status and, in turn, to remove the action *on its behalf*.")(emphasis in original). When the Attorney General failed to remove, CHC argues, it, as the "deemed defendant," had a "right to remove" under § 233(l)(2), which serves as a "failsafe for [this] very situation." *Id.* at 22. In support, CHC cites *Blumberger v. Tilley*, 115 F.4th 1113 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2818 (2025).

In that case, a physician employed at a "deemed" community health center was sued in state court for malpractice. The Attorney General timely appeared and notified the state court that "whether [the defendant] is deemed to be an employee of the Public Health Service for purposes of 42 U.S.C. § 233 with respect to the actions or omissions that are the subject of the above captioned action, is under consideration." *Id.* at 1120. The Attorney General did not remove the case to federal court. *Id.* About a year later, the Attorney General amended the notice and stated that the defendant was "not deemed to be an employee of the [PHS] ... with respect to the actions or omissions that are the subject of the [lawsuit]." *Id.* The defendant then removed, invoking 28 U.S.C. § 1442(a)(1) and 42 U.S.C. § 233(l)(2). *Id.* The district court granted the motion to remand because it determined that removal under § 1442 was untimely and removal under § 233(l)(2) was improper. *Id.* at 1121. On appeal, the Ninth Circuit held that the Attorney General should have

removed the case because "it is an employee's deemed status, not covered status, that triggers the removal provisions of § 233(l)(1)." *Id.* at 1134. The Court held that under § 233(l)(1) "the Attorney General need only have confirmed that [the defendant doctor] had been deemed and that the lawsuit arose out of a category of covered services," that is, the performance of medical, surgical, dental, or related functions. *Id.* The *Blumberger* court concluded that that provision was satisfied because the complaint in that case alleged medical malpractice. *Id.*

*Blumberger* did not determine the issue presented here - whether the defendant was permitted to remove under § 233(l)(2) after the Attorney General timely appeared. *Id.* at 1140 ("we decline to consider whether [defendant's] removal under § 233(l)(2) was improper"). *See In re Cmty. Clinic of Maui Data Breach Litig.*, 2025 WL 1863106, at *5 (D. Haw. July 7, 2025) ("*Blumberger* did not reach the question of whether a defendant's own removal is proper where the Attorney General does appear in state court, but certifies in the negative.") Further, the *Blumberger* court decision is not binding on me and at least two district courts have declined to follow it. *See Lockhart v. El Centro del Barrio*, 779 F. Supp. 3d 895, 903 (W.D. Tex. 2025) and *Wilson v. O'Dell*, 2025 WL 2313228, at *9 (W.D. Va. Aug. 11, 2025). I do not find the majority's decision in *Blumberger* to be persuasive, and agree with several of the points raised by the dissent. Section 233(l)(1) is not, by itself, a removal statute at all; it makes no reference to removal. The statute merely requires the Attorney General to provide advice to the state court about the defendant's status "with respect to the actions or omissions that are the subject of" the lawsuit. § 233(l)(1). The statute then provides that "such advice" will satisfy subsection (c), which is a removal statute but one that provides for removal only by the Attorney General and only when he or she certifies that the defendant was acting "in the scope of his employment at the time of the incident out of which the suit arose." 42 U.S.C. 233(c). Nowhere does Section 233(c), or Section

233(l)(1), suggest that the defendant may remove the case.  Nor does either provision suggest that a district court may, after reviewing and disagreeing with the Attorney General's negative advice to the state court, assert jurisdiction over the case by removal or otherwise.

       In any event, even the majority's reasoning in *Blumberger* does not support removal here. *Blumberger* construed § 233(l)(1) "as requiring a simple up-down certification to the state court that the defendant has been deemed a PHS employee for the time period in question with respect to the category of services identified in the complaint." *Blumberger*, 115 F.4th at 1133.  There, the complaint alleged that the defendant physician "negligently failed to provide proper medical care", conduct which the Court found fell within the ambit of "the performance of medical, surgical, dental, or related functions."  But here, "the category of services identified in the complaint," *id*., does not fall within the "performance of medical, surgical, dental, or related functions."  Under the *ejusdem generis* canon, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Wojchowski v. Daines*, 498 F.3d 99, 108 n.8 (2d Cir. 2007).  So, the term "related functions" embraces only functions similar in nature to the provision of medical, surgical, and dental services, and, in my view, compliance with federal privacy laws does not qualify.  The enumerated functions all concern healing the human body, and so while rehabilitative services, psychotherapeutic services, and laboratory testing services, for example, all may qualify, compliance with legal requirements, even if those requirements are unique to federally supportive community health centers, does not.  So even if I were to review the Attorney General's decision, I would not fault it here, where the claim concerns the defendant's data security. *See In re Cmty. Clinic of Maui Data Breach Litig*., 2025 WL 1863106, at *6 (concluding that *Blumberger* did not support remand where the category of services was cybersecurity).

CHC's argument that it is permitted to remove is foreclosed by the language of the statute. Section 233(l)(2) provides that "the defendant may remove the case itself if the Attorney General fails to appear in the state-court proceeding within fifteen days of being notified."  Under the plain text of § 233(l)(2), the Attorney General's timely appearance foreclosed removal by CHC. Contrary to CHC's argument, the clear and unambiguous statutory language of § 233(l)(2) does not allow removal if the Attorney General timely appears, even if the Attorney General advises the court that the defendant is not covered under § 233.  The court in *Johnson v. Petaluma Health Ctr., Inc.*, 784 F. Supp. 3d 1360 (N.D. Cal. 2025), rejected an argument similar to that asserted by CHC here, as follows:

> [Defendant] ... argues that ... even if the Attorney General had given the state court a negative advisal, that would have given [Defendant] the right to remove. But the statute doesn't say that. It says the Attorney General must remove if she appears and determines that the defendant is a deemed employee with respect to the acts or omissions that are the subject of the lawsuit. And it says the defendant can remove after 15 days if the Attorney General doesn't appear. But the statute does not say that the defendant can remove if the Attorney General appears in 15 days and provides a negative advisal.

*Id.* at 1367 (noting that if "Congress really intended for every [deemed defendant] case to be removed," it could have drafted a statute that said so instead of "having the Attorney General appear in state court to give an advisal").  Other courts have likewise concluded that § 233(l)(2) does not permit removal if the Attorney General has timely appeared.  *See Doe v. Centerville Clinics Inc.*, 2024 WL 3666164, at *2 (3d Cir. Aug. 6, 2024), *cert. denied*, 2025 WL 889143 (Mar. 24, 2025); *Allen v. Christenberry*, 327 F.3d 1290, 1296 (11th Cir. 2003)); *Lockhart v. El Centro del Barrio*, 779 F. Supp. 3d 895, 903 (W.D. Tex. 2025); *In re Cmty. Clinic of Maui Data Breach Litig.*, 2025 WL 1863106, at *5; *Moser v. E. Cent. Missouri Behav. Health Servs., Inc.*, 2025 WL 2606549, at *3 (E.D. Mo. Sept. 9, 2025); *V.G. by & through Osorio v. Cha Hollywood Med. Ctr.*, 2024 WL 289320, at *2 (C.D. Cal. Jan. 23, 2024); *Barnes v. Sea Mar Cmty. Health Centers*, 2022

WL 1541927, at *3 (W.D. Wash. Apr. 27, 2022).  Accordingly, removal was not proper under §
233(l)(2).

**B.      28 U.S.C. § 1442(a)(1)**

Frankfurter next challenges CHC's removal under § 1442(a), the federal officer removal
statute.

The federal officer removal statute provides for removal jurisdiction over civil actions
commenced against "[t]he United States or any agency thereof or any officer (or any person acting
under that officer) of the United States or of any agency thereof, in an official or individual
capacity, for or relating to any act under color of such office ...."  28 U.S.C. § 1442(a)(1).

As a preliminary matter, Frankfurter argues that CHC cannot remove under § 1442(a)
based on its "deemed" status because it is limited to § 233, FSHCAA's removal statute.  ECF No.
14-1 at 16.  ("Defendant cannot use § 1442 as a workaround to the statutory process Congress set
out in § 233.")  But as CHC points out, this argument is foreclosed by *Agyin v. Razmzan*, 986 F.3d
168 (2d Cir. 2021), in which the Second Circuit concluded that the two statutes provide separate
and alternative removal authorizations to deemed PHS defendants.  There, the Court held that the
defendant physician, a "deemed" employee sued for medical malpractice, was not limited to
removal under 42 U.S.C. § 233 but could also invoke 28 U.S.C. § 1442, because "removal under
each provision has different consequences" and "[f]or that reason, it is natural to understand § 233
as providing supplemental removal rights to persons in a specific situation, even though such
persons also may sometimes remove under § 1442."  *Id.* at 180.

*Persons Acting Under a Federal Officer*

Frankfurter next argues that even if CHC may invoke § 1442(a), it nonetheless fails to meet
its burden of establishing that it was "acting under a federal officer," an element under the statute.

ECF No. 14-1 at 19.

"A defendant who is not a federal officer or agency must satisfy three elements to have a suit against it removed under this statute." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007). "First, it must show that it is a 'person' within the meaning of the statute.[3] Second, it must establish that it was 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct and asserted official authority.... Finally, the defendant must raise a colorable federal defense." *Id.* (internal quotation marks and citation omitted).

The parties dispute whether the defendant was "acting under" a federal officer. Congress used the words "acting under" to describe "the triggering relationship between a private entity and a federal officer." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 149 (2007). That relationship involves "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152. To establish the second element, a defendant must show that "the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 488 F.3d 112, 124 (2d Cir. 2007); *see also State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 143, 145 (2d Cir. 2023). "Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon." *In re MTBE Prods. Liab. Litig,* 488 F.3d at 124-25 (internal quotation marks and citation omitted). "[T]he mere fact that a corporation participates in a regulated industry is insufficient to support removal absent a showing that the particular conduct being sued upon is closely linked to detailed and specific regulations." *Id.* at 125. "The line between the absence and the presence of 'direct

---

[3] Corporations are "persons" within the meaning of the statute. *Id.*

control' by a federal officer over a private party is a fine one, depending heavily on the facts of each case and the particular conduct giving rise to the plaintiff's cause of action." *Id. See id.* at 126–30 (concluding that defendants were not acting under direction of federal officer when they blended MTBE into their gasoline because the Clean Air Act and its regulations did not require the use of MTBE, and the fact that the EPA "may have expected that the defendants would use MTBE" was insufficient). Mere compliance with federal regulations does not provide a basis for federal officer removal. *Watson,* 551 U.S. at 152.

CHC argues it was acting under a federal officer when it "provided medical and related services to Plaintiffs (thereby collecting, generating, and needing to protect the confidential information at issue)." ECF No. 24 at 25. In support, CHC points to various statutes and regulations that require it as a deemed health center to maintain the confidentiality of patient information. *Id.* at 26. *See* 42 U.S.C. § 254b(k)(3)(C) (requiring deemed health centers to "have an ongoing quality improvement system that includes clinical services and management, and that maintains the confidentiality of patient records"); 42 C.F.R. § 51c.110 (requiring deemed community health centers to hold confidential "[a]ll information as to personal facts and circumstances obtained by the project staff about recipients of services"); 42 C.F.R. § 51c.303(b) (obligating health centers to implement a system for maintaining the confidentiality of patient records in accordance with § 51c.110). CHC cites as support the Second Circuit's decision in *Agyin*, 986 F.3d 168.

The defendant in *Agyin* was a physician employed by a deemed community health center who was sued in state court for medical malpractice. The Second Circuit concluded that removal under § 1442 was proper because the defendant was acting under a federal officer when he provided medical care to the plaintiff. *Id.* at 174. In so concluding, the Court stated that the

12

defendant physician was providing direct medical care- the core function that Congress intended deemed health centers to perform, one that

> in the absence of the Federally Supported Health Centers Assistance Act and its provision for deeming health centers and their staffs to be federal employees—the federal government would have had to perform itself: He assisted and helped to carry out the duties of the federal government to provide medical care to the indigent.

*Id.* at 176.  The Court further observed that the defendant acted "under the direct and detailed control of a federal agency or officer."  *Id.* at 177.  The defendant "acted pursuant to an employment contract" that set forth his responsibilities with a federally supported community health center, "which itself is subject to detailed requirements and oversight by the federal government" regarding the provision of medical care.  *Id.* And the "federal government retained discretion to refuse to deem [the defendant] an employee of the Public Health Service based on his *individual* failure to comply with the policies and procedures that the [clinic] ... implemented to reduce malpractice."  *Id.* at 178 (internal quotation marks omitted).  The Court concluded that the defendant's "challenged conduct was directed by federal regulation and he was acting under a federal officer" (emphasis added)).  *Id.*

*Agyin* is inapposite.  The federal government extensively regulates how medical care is provided in a deemed health center but that degree of specific and comprehensive regulation is absent here.  This case involves CHC's cybersecurity procedures and protocols to protect records containing personal information.  The degree of federal oversight and direction as to data security is markedly different from the extensive regulation regarding the provision of medical care in *Agyin*.  The regulations CHC cites dictate that CHC is obligated to maintain the confidentiality of patient data but do not direct the manner in which CHC is to discharge its responsibility of protecting data confidentiality.  CHC does not argue that the federal government prescribed

specific cybersecurity protocols CHC had to follow, approved its data security policy, supervised its data security decisions, or directed its implementation choices.  CHC has not shown it was acting under the "close supervision, subjection, guidance, or control of federal officers" in discharging its obligation to safeguard patient information, *Tong*, 83 F.4th at 144, or that the acts forming the basis of the complaint – alleged tortious conduct in failing to protect personal data from unauthorized access - were taken pursuant to a federal officer's direct orders or to comprehensive and detailed regulations.  Merely complying with federal laws or regulations, without more, does not constitute "acting under" a federal official for the purposes of federal officer removal.  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 145 (2007).   Other courts in data breach cases against deemed health centers also have so concluded.  *See Moser*, 2025 WL 2606549, at *4 (rejecting defendant's argument that *Agyin* controlled and concluding instead that deemed health center's cybersecurity activities were not taken pursuant to the direction of a federal official for the purposes of § 1442(a)(1)); *In re Cmty. Clinic of Maui Data Breach Litig.*, 2025 WL 1863106, at *12 (concluding § 1442 does not provide a valid basis for a deemed health center to remove data breach complaint because "cybersecurity to protect medical patients' data does not satisfy th[e] [acting under a federal officer] test"); *Lockhart*, 779 F. Supp. 3d at 909 (concluding that deemed health center defendant was not acting pursuant to a federal officer's directions and granting remand); *Petaluma Health Ctr., Inc.*, 2025 WL 1539853, at *6 (concluding that "the conduct complained of in this lawsuit—the storage of patients' medical information—was not done 'acting under' a federal officer.")  CHC cites *Krandle v. Refuah Health Ctr., Inc*., 2023 WL 2662811, at *11 (S.D.N.Y. Mar. 28, 2023), a data breach case in which the district court, citing *Agyin*, concluded that federal regulations requiring the defendant to keep patient records safe "arguably qualify[ed] RHC's actions as 'acting under' color of federal regulations."  But as stated

above, I disagree that these regulations are sufficient to establish the requisite federal direction. Accordingly, removal was not proper under 28 U.S.C. § 1442(a)(1).[4]

## C.    28 U.S.C. § 1332(d)

Finally, Frankfurter argues that removal under CAFA was improper because CAFA's "home state" exception applies.  ECF No. 14-1 at 23.

Congress' "primary objective" in enacting CAFA was "ensuring [f]ederal court consideration of interstate cases of national importance."  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (internal quotation marks omitted).  CAFA "confers original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states."  *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013) (citing 28 U.S.C. § 1332(d)(2)).  CAFA includes several exceptions that either require or permit courts to decline exercising jurisdiction in certain circumstances.   "[O]nce the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions."  *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010).  "In determining whether the CAFA exceptions apply, courts have applied a preponderance of the evidence standard.... Unlike in other removal contexts, no antiremoval presumption attends cases invoking CAFA jurisdiction."  *Gaska v. DARCARS of R.R. Ave., Inc.,* 673 F. Supp. 3d 157, 164-65 (D. Conn. 2023) (internal quotation marks and citation omitted).

---

[4] Because I conclude that CHC was not acting under the direction of a federal officer, I need not consider whether CHC satisfied the third requirement for § 1442 removal, i.e., whether it has a colorable federal defense.  *See MTBE*, 488 F.3d at 132.

The home state exception requires district courts to "decline to exercise jurisdiction" over class actions in which two-thirds or more of the class, and the primary defendants, are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B). It is "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state" and "to keep purely local matters and issues of particular state concern in the state courts." *Brook v. UnitedHealth Group Inc.*, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) (internal quotation marks and citations omitted).

Here, it is undisputed that the defendant is a Connecticut citizen. ECF No. 24 at 30. At issue is whether two-thirds of the potential plaintiffs were Connecticut citizens when the action was filed. CHC does not dispute that 1,008,519 individuals out of the total affected group of 1,060,936 provided CHC with a Connecticut address. Frankfurter argues that from this, the Court can infer that at least two-thirds of the proposed class are Connecticut citizens. CHC disagrees and claims that mailing addresses are not sufficient to establish domicile. ECF No. 24 at 30.

"Domicile and residence are not synonymous, although the two typically coincide.... An individual's state domicile is more than [a] residence, because it requires both residence in a state and an intent to remain there." *Windward Bora LLC v. Browne*, 110 F.4th 120, 124 n.5 (2d Cir. 2024) (internal quotation marks omitted). The court may "simply make reasonable assumptions about the makeup of the putative class," *Commisso v. PricewaterhouseCoopers LLP*, 2012 WL 3070217, at *4 (S.D.N.Y. July 27, 2012), and "may infer citizenship for the purposes of evaluating whether the citizenship requirement of a CAFA exception has been met by the moving party." *Kurovskaya v. Project O.H.R., Inc.*, 251 F. Supp. 3d 699, 703 (S.D.N.Y. 2017) (inferring citizenship from residency and from principal place of business of employer); *Weider v. Verizon*

16

*New York Inc*., 2015 WL 3474102, at *2 (E.D.N.Y. June 2, 2015) (finding it "eminently reasonable" to assume that putative class members with New York addresses were New York citizens); *Lucker v. Bayside Cemetery*, 262 F.R.D. 185, 189 (E.D.N.Y. 2009) (finding reasonable the "assumption that the majority-and certainly one-third-of those buried, or desiring to be buried, in a Queens cemetery are New York residents"); *Mattera v. Clear Channel Communications*, *Inc.*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) ("While Defendants have not provided evidence, in the form of an affidavit or otherwise, establishing such citizenship, it is reasonably likely that more than two-thirds of the putative class members of the proposed class—all of whom work in New York—are citizens of New York").

CHC provided health care to patients in Connecticut.  ECF No. 1-1 ¶ 26.  When this is added to the fact that over 95% of the potentially affected individuals provided a Connecticut address, it is reasonable to infer that at least two-thirds of prospective class members are, in fact, Connecticut citizens.  Because I find that at least two-thirds of the putative class members are citizens of Connecticut, this case must be remanded under CAFA's home state exception.

## IV.    Conclusion

For the foregoing reasons, I conclude removal was not proper under any of the three statutes CHC invokes.  Accordingly, the plaintiff's motion to remand (ECF No. 14) is granted.

IT IS SO ORDERED.

_____
        /s/
        Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
      February 9, 2026